**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| DELORES METZGER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Case No. CIV-05-1387-M |
| | ) |
| AMERICAN FIDELITY ASSURANCE | ) |
| COMPANY, a domestic corporation, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Before the Court are Senator Glenn Coffee's "Objection and Motion to Quash Subpoena

Duces Tecum" [docket no. 146], filed March 15, 2007, and Representative Ron Peterson's

"Objection and Motion to Quash Subpoena Duces Tecum" [docket no. 149], filed March 19, 2007.

On March 19, 2007, and on March 21, 2007, Plaintiff filed her respective responses.  Based upon

the parties' submissions, the Court makes its determination.[1]

I.      INTRODUCTION

This case was originally filed in Oklahoma state court.  Plaintiff alleges claims of breach of

contract and breach of the duty of good faith and fair dealing by Defendant.  Plaintiff served Senator

Glenn Coffee with a subpoena duces tecum directing Senator Coffee to produce:

> 1.      Any documents that you received from
> Fried.Kilpatrick.Guinn and/or American Fidelity in
> connection with any proposed language to be included in the
> Actual Charge Legislation or any other legislation concerning
> the definition of "actual charge(s)" or "actual fee(s)."
> 2.      All documents relating to, evidencing, memorializing or
> summarizing any drafts of, revisions to, or proposal language
> for, the Actual Charge Legislation.

---

[1]Representative Peterson's Motion adopts and incorporates the arguments and authorities
set out in Senator Coffee's Motion.

3.      All documents relating to, evidencing, memorializing or summarizing or recording any Communications between you and American Fidelity concerning: (a) any proposed or passed legislation relating to the definition of "actual charge" or "actual fee"; and/or (b) the Actual Charge Legislation.

4.      All documents, including, internal memoranda relating to: (a) the definition of "actual charge(s)" or "actual fee(s)," "expense(s) incurred" or "incurred expense(s)"; (b) legislation (proposed or passed) concerning such definition(s); and/or (c) the Actual Charge Legislation.

5.      All documents relating to, evidencing, memorializing or summarizing your knowledge and/or understanding of the terms, coverages, limitations, and benefits contained in any Limited Benefit Specified Disease Cancer Expense Policy sold by American Fidelity.

6.      All documents relating to, evidencing, memorializing or summarizing the Actual Charge Litigation or any other lawsuits, claims or disputes concerning the interpretation of the phrase "actual charge(s)" within the context of an insurance policy.

7.      All documents relating to, evidencing, memorializing, summarizing or recording Communications (including e-mails) between you and any member, official, officer, employee or agent of the legislature, judicial or executive branch of the Oklahoma government concerning: (a) any proposed or passed legislation relating to the definition of "actual charge" or "actual fee"; and/or (b) the Actual Charge Legislation.

8.      All documents relating to, evidencing, memorializing, summarizing, comprising or recording communications (including e-mails) between you and the Commissioner or any members, officers, employees or agents of the Insurance Department concerning: (a) any proposed or passed legislation relating to the definition of "actual charge" or "actual fee"; and/or (b) the Actual Charge Legislation.

9.      All documents relating to, evidencing, memorializing, summarizing, comprising or recording any proposed drafts of, revisions to and/or proposed language to be included in the Actual Charge Legislation.

10.     All documents relating to, evidencing, memorializing, summarizing or recording any communications (including e-mails), analysis, discussion, debates, investigations and research concerning whether the Actual Charge Legislation, as proposed, revised, amended, passed or codified, constitutes

2

an unlawful ex post facto law by effectively impairing the contractual rights of Oklahoma policyholders in violation of the Constitutions of the United State and/or Oklahoma.

11.     All documents relating to, evidencing, memorializing, summarizing or recording any statements, representations, or testimony to any legislative, executive or judicial body relating to the Actual Charge Legislation.

12.     All documents, including internal memoranda, all Communications and all drafts of legislative revisions relating to the inclusion of 36 O.S. § 3651(c) in the Actual Charge Legislation which states: "This section applies to an insurance policy in effect on the effective date of this act, only if the policy does not define 'actual charges' or 'actual fee.'"

Exhibit A attached to Motion to Quash.  Representative Ron Peterson was served with an identical subpoena duces tecum.  Senator Coffee and Representative Peterson now move this Court to quash the subpoenas.

## II.     DISCUSSION

Federal Rule of Civil Procedure 45(c)(3)(A) provides, in pertinent part, "[o]n timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it . . . (iii) requires the disclosure of privileged or otherwise protected matter and no exception or waiver applies . . . ." Fed. R. Civ. P. 45(c)(3)(A).

### A.     Legislative Privilege

Article 5, Section 22 of the Oklahoma Constitution provides: "Senators and Representatives shall, except for treason, felony, or breach of the peace, be privileged from arrest during the session of the Legislature, and in going to and returning from the same, and, *for any speech or debate in either House, shall not be questioned in any other place*."  Article 1, Section 6, Clause 1 of the United States Constitution provides:

The Senators and Representatives shall receive a Compensation for

3

> their Services, to be ascertained by Law, and paid out of the Treasury
> of the United States. They shall in all Cases, except Treason, Felony
> and Breach of the Peace, be privileged from Arrest during their
> Attendance at the Session of their respective Houses, and in going to
> and returning from the same; and for any Speech or Debate in either
> House, they shall not be questioned in any other Place.

United States Constitution Art. 1, § 6, cl. 1.  The Oklahoma Supreme Court has found that "[t]he line

separating protected from unprotected legislative activity lies in the distinction between 'purely

legislative activities' and those that are non[-]germane 'political matters.'" *Brock v. Thompson*, 948

P.2d 279, 288 (Okla. 1997) (citing *US v. Brewster*, 408 U.S. 501, 512 (1972)).  The Oklahoma

Supreme Court also found that "Oklahoma's Speech or Debate Clause . . . provides at least as much

protection as the immunity granted by the comparable provisions of the Federal Constitution." *Id*.

at 287 n.26.  In *Brewster*, the Supreme Court shed light on what is meant by the phrase "purely

legislative activities" stating:

> It is well known, of course, that Members of the Congress engage in
> many activities other than the purely legislative activities protected
> by the Speech or Debate Clause.  These include a wide range of
> legitimate 'errands' performed for constituents, the making of
> appointments with Government contracts, preparing so-called 'news
> letters' to constituents, news releases, and speeches delivered outside
> the Congress.
> > \*   \*   \*
> Although these are entirely legitimate activities, they are political in
> nature rather than legislative in nature, in the sense that term has been
> used by the Court in prior cases.
> > \*   \*   \*
> Careful examination of the decided cases reveals that the Court has
> regarded the protection as reaching only those things 'generally done
> in a session of the House by one of its members in relation to the
> business before it, . . . or things "said or done by him, as a
> representative, in the exercise of the functions of that office."

*Id*. at 512-13 (quoting *Kilbourn v. Thompson*, 103 U.S. 168, 204 (1881)); *Gravel v. United States*,

408 U.S. 606, 617 (1972) ("To confine the protection . . . to words spoken in debate would be an

unacceptably narrow view.  Committee reports, resolutions and the act of voting are equally covered . . . .").

Senator Coffee and Representative Peterson assert that the records sought, if they exist, are "an integral part of the legislative process in considering and enacting state law," and, therefore, within the scope of the legislative privilege.  Motion to Quash at 6-7.  As such, Senator Coffee and Representative Peterson assert they may not be forced to produce them or to testify regarding them. Plaintiff contends that her subpoena merely requests that Senator Coffee and Representative Peterson  produce and authenticate documents, and "does not command [them] . . . to provide any trial testimony whatsoever, let alone any testimony regarding [their] . . . motives for engaging in purely legislative acts."  Plaintiff's Response at 8.  Plaintiff further contends that the documents sought relate to Senator Coffee or Representative Peterson's political activities, such as their communications with AFA and its lobbyists.  As such, Plaintiff contends the legislative privilege does not protect the requested items from discovery.

Having carefully reviewed the parties' submissions, the Court finds that the documents are clearly within the purview of the legislative privilege.  Specifically, the Court finds that the documents sought are not "political activities" of the type envisioned by *Brewster*, rather they relate to tasks generally done by members of the legislature in relation to the business before it.  As such, the Court finds that Senator Coffee and Representative Peterson's motions to quash should be granted.

B       Waiver

Federal Rule of Civil Procedure 45(d)(2) provides, in pertinent part:

> When information subject to a subpoena is withheld on a clam that
> it is privileged . . . , the claim shall be made expressly and shall be

supported by a description of the nature of the documents,
communications, or things not produced that is sufficient to enable
the demanding party to contest the claim.

Fed. R. Civ. P. 45(d)(2).  Plaintiffs asserts that neither Senator Coffee nor Representative Peterson

provided a privilege log and that, as such, they have waived their legislative privilege.  Having

reviewed the parties' submissions, the Court finds that even if no privilege log has been provided,

the nature of the documents sought is clear from the text of Plaintiff's request.  The Court also finds

that it is clear from Plaintiff's lengthy response to the instant motion that Plaintiff's ability to contest

the claim has been protected.  Accordingly, the Court finds the circumstances of this case do not

justify waiver of the privilege.

III.     CONCLUSION

For the reasons set forth in detail above, the Court finds that Senator Glenn Coffee's

"Objection and Motion to Quash Subpoena Duces Tecum" [docket no. 146] and Representative

Peterson's "Objection and Motion to Quash Subpoena Duces Tecum" [docket no. 149] should be,

and hereby are, GRANTED.

**IT IS SO ORDERED this 22nd day of March, 2007.**


VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE